**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ANTHONY FRANCHI, Individually and On Behalf of All Others Similarly Situated, ) ) ) | |
| Plaintiff, ) ) | |
| v. ) ) | Case No. _____ |
| ARC LOGISTICS PARTNERS LP, ARC LOGISTICS GP LLC, LIGHTFOOT CAPITAL PARTNERS, LP, LIGHTFOOT CAPITAL PARTNERS GP LLC, VINCENT T. CUBBAGE, JOHN PUGH, EDWARD P. RUSSELL, ERIC J. SCHEYER, SIDNEY L. TASSIN, GARY G. WHITE, BARRY L. ZUBROW, ZENITH ENERGY U.S., L.P., ZENITH ENERGY U.S. GP, LLC, ZENITH ENERGY U.S. HOLDINGS, LLC, and ZENITH ENERGY U.S. LOGISTICS, LLC, ) ) ) ) ) ) ) ) ) ) ) ) | JURY TRIAL DEMANDED<br><br>CLASS ACTION |
| Defendants. ) | |

**COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934**

Plaintiff, by his undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

**NATURE OF THE ACTION**

1. This action stems from a proposed transaction announced on August 29, 2017 (the "Proposed Transaction"), pursuant to which Arc Logistics Partners LP ("Arc" or the "Partnership") will be acquired by Zenith Energy U.S., L.P. ("Parent"), Zenith Energy U.S. GP, LLC ("Parent GP"), Zenith Energy U.S. Holdings, LLC ("Holdings"), and Zenith Energy U.S. Logistics, LLC ("Merger Sub" and together with Parent, Parent GP, and Holdings, "Zenith").

2. On August 29, 2017, Arc's Board of Directors (the "Board" or "Individual

Defendants") caused the Partnership to enter into an agreement and plan of merger (the "Merger Agreement") with Zenith, Arc Logistics GP LLC ("MLP GP"), Lightfoot Capital Partners, LP ("LCP LP"), and Lightfoot Capital Partners GP LLC ("LCP GP") (together, the "Lightfoot Entities"). Pursuant to the terms of the Merger Agreement, unitholders of Arc will receive $16.50 in cash for each common unit of Arc they own.

3. On September 26, 2017, defendants filed a Preliminary Proxy Statement (the "Proxy Statement") with the United States Securities and Exchange Commission ("SEC") in connection with the Proposed Transaction.

4. The Proxy Statement omits material information with respect to the Proposed Transaction, which renders the Proxy Statement false and misleading. Accordingly, plaintiff alleges herein that defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Proxy Statement.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

6. This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper under 28 U.S.C. § 1391(b) because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## PARTIES

8. Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of Arc common stock.

9. Defendant Arc is a Delaware limited partnership and maintains its principal executive offices at 725 Fifth Avenue, 19th Floor, New York, NY 10022. Arc's common stock is traded on the NYSE under the ticker symbol "ARCX."

10. Defendant MLP GP is a Delaware limited liability company and a party to the Merger Agreement.

11. Defendant LCP LP is a Delaware limited partnership and a party to the Merger Agreement.

12. Defendant LCP GP is a Delaware limited liability company and a party to the Merger Agreement.

13. Defendant Vincent T. Cubbage ("Cubbage") is Chairman of the Board and Chief Executive Officer ("CEO") of the Partnership.

14. Defendant John Pugh ("Pugh") is a director of the Partnership.

15. Defendant Edward P. Russell ("Russell") is a director of the Partnership.

16. Defendant Eric J. Scheyer ("Scheyer") is a director of the Partnership.

17. Defendant Sidney L. Tassin ("Tassin") is a director of the Partnership.

18. Defendant Gary G. White ("White") is a director of the Partnership.

19. Defendant Barry L. Zubrow ("Zubrow") is a director of the Partnership.

20. The defendants identified in paragraphs 13 through 19 are collectively referred to herein as the "Individual Defendants."

21. Defendant Parent is Delaware limited partnership and a party to the Merger

Agreement.

22.     Defendant Parent GP is a Delaware limited liability company and a party to the Merger Agreement.

23.     Defendant Holdings is a Delaware limited liability company and a party to the Merger Agreement.

24.     Defendant Merger Sub is a Delaware limited liability company and a party to the Merger Agreement.

## CLASS ACTION ALLEGATIONS

25.     Plaintiff brings this action as a class action on behalf of himself and the other public unitholders of Arc (the "Class").  Excluded from the Class are defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any defendant.

26.     This action is properly maintainable as a class action.

27.     The Class is so numerous that joinder of all members is impracticable.  As of August 29, 2017, there were approximately 19,545,944 units of Arc common stock outstanding, held by hundreds, if not thousands, of individuals and entities scattered throughout the country.

28.     Questions of law and fact are common to the Class, including, among others: (i) whether defendants violated the 1934 Act; and (ii) whether defendants will irreparably harm plaintiff and the other members of the Class if defendants' conduct complained of herein continues.

29.     Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature.  Plaintiff's claims are typical of the claims of the other members of the Class and plaintiff has the same interests as the other members of the Class.  Accordingly, plaintiff is an adequate representative of the Class and will fairly and

4

adequately protect the interests of the Class.

30. The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for defendants, or adjudications that would, as a practical matter, be dispositive of the interests of individual members of the Class who are not parties to the adjudications or would substantially impair or impede those non-party Class members' ability to protect their interests.

31. Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class. Therefore, final injunctive relief on behalf of the Class is appropriate.

## SUBSTANTIVE ALLEGATIONS

### *Background of the Partnership and the Proposed Transaction*

32. Arc is a fee-based, growth-oriented limited partnership that was formed to own, operate, develop, and acquire a diversified portfolio of complementary energy logistics assets.

33. The Partnership is principally engaged in the terminalling, storage, throughput, and transloading of crude oil and petroleum products.

34. According to its website, Arc is focused on growing its business through the optimization, organic development, and acquisition of terminalling, storage, rail, pipeline, and other energy logistics assets that generate stable cash flows.

35. Arc's logistics assets are strategically located along the East Coast, West Coast, Gulf Coast, and Midwest regions of the United States to receive and supply a diverse group of third-party customers, including major oil and gas companies, independent refiners, crude oil and petroleum product marketers, distributors, and various industrial manufacturers. The location of

the Partnership's assets, combined with its connectivity to major U.S. energy infrastructure, allows it to meet the evolving needs of its customers.

36. Arc provides customers with storage alternatives to handle a wide array of products including gasoline, distillates, aviation gas, asphalt, fuel oil, crude oil, ethanol, bio-diesel, methanol, and crude tall oil.

37. On August 29, 2017, the Individual Defendants caused the Partnership to enter into the Merger Agreement, pursuant to which the Partnership will be acquired by Zenith.

38. The Merger Agreement contains a "no solicitation" provision in the Merger Agreement that prohibits the Individual Defendants from soliciting alternative proposals and severely constrains their ability to communicate and negotiate with potential buyers who wish to submit or have submitted unsolicited alternative proposals.

39. Further, the Partnership must promptly advise Zenith of any proposals or inquiries received from other parties.

40. Moreover, the Merger Agreement contains a restrictive "fiduciary out" provision permitting the Board to withdraw its approval of the Proposed Transaction under extremely limited circumstances, and grants Zenith a "matching right" with respect to any "Superior Proposal" made to the Partnership.

41. Further locking up control of the Partnership in favor of Zenith, the Merger Agreement provides for a "termination fee" payable by the Partnership to Zenith if the Individual Defendants cause the Partnership to terminate the Merger Agreement.

42. By agreeing to all of the deal protection devices, the Individual Defendants have locked up the Proposed Transaction and have precluded other bidders from making successful competing offers for the Partnership.

43. Additionally, the Lightfoot Entities and MTP Energy Master Fund Ltd. entered into support agreements, pursuant to which they have agreed to vote their Arc common units in favor of the Proposed Transaction. Accordingly, approximately 29.7% of the Partnership's common units are already locked up in favor of the merger.

44. The consideration to be paid to plaintiff and the Class in the Proposed Transaction appears inadequate.

45. Among other things, the intrinsic value of the Partnership is materially in excess of the amount offered in the Proposed Transaction.

46. Accordingly, the Proposed Transaction will deny Class members their right to share proportionately and equitably in the true value of the Partnership's valuable and profitable business, and future growth in profits and earnings.

*The Proxy Statement Omits Material Information, Rendering It False and Misleading*

47. Defendants filed the Proxy Statement with the SEC in connection with the Proposed Transaction.

48. The Proxy Statement omits material information with respect to the Proposed Transaction, which renders the Proxy Statement false and misleading.

49. First, the Proxy Statement omits material information regarding Arc's financial projections and the financial analyses performed by the Partnership's financial advisor, Tudor Pickering Holt & Co Advisors LP ("Tudor").

50. With respect to Arc's financial projections, the Proxy Statement fails to disclose: the definition of Adjusted EBITDA and the line items used to calculate Adjusted EBITDA; the definition of unlevered free cash flow and distributable cash flow and the line items used to calculate unlevered free cash flow and distributable cash flow, respectively; and a reconciliation

7

of all non-GAAP to GAAP metrics.

51. With respect to Tudor's Discounted Cash Flow Analyses, the Proxy Statement fails to disclose: the estimated terminal values used in the analyses; and the inputs and assumptions underlying the discount rates applied by Tudor in the analyses.

52. With respect to Tudor's Trading Comparables Analyses, the Proxy Statement fails to disclose the individual multiples and financial metrics for the companies observed by Tudor in the analyses.

53. With respect to Tudor's Corporate Transactions Analyses, the Proxy Statement fails to disclose the individual multiples and financial metrics for the transactions observed by Tudor in the analyses.

54. With respect to Tudor's Transactions Premiums Analyses, the Proxy Statement fails to disclose the transactions observed by Tudor in the analyses and the premiums paid in such transactions.

55. The disclosure of projected financial information is material because it provides equity holders with a basis to project the future financial performance of a company, and allows equity holders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion. Moreover, when a banker's endorsement of the fairness of a transaction is touted to equity holders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

56. The omission of this material information renders the Proxy Statement false and misleading, including, *inter alia*, the following sections of the Proxy Statement: (i) "Background of the Merger"; (ii) "Recommendation of the GP Conflicts Committee and the MLP GP Board;

Reasons for Recommending Approval of the Merger Proposal"; (iii) "Opinion of the GP Conflicts Committee's Financial Advisor"; and (iv) "Certain Financial Projections."

57. Second, the Proxy Statement fails to disclose whether any nondisclosure agreements executed by Arc and the prospective bidders contained standstill and/or "don't ask, don't waive" provisions that are or were preventing those counterparties from submitting superior offers to acquire the Partnership.

58. Without this information, unitholders may have the mistaken belief that, if these potentially interested parties wished to come forward with a superior offer, they are or were permitted to do so, when in fact they are or were contractually prohibited from doing so.

59. The omission of this material information renders the Proxy Statement false and misleading, including, *inter alia*, the following sections of the Proxy Statement: (i) "Background of the Merger"; and (ii) "Recommendation of the GP Conflicts Committee and the MLP GP Board; Reasons for Recommending Approval of the Merger Proposal."

60. Third, the Proxy Statement omits material information regarding potential conflicts of interest of Tudor.

61. Specifically, the Proxy Statement fails to disclose the nature of the past services provided by Tudor to the parties to the Merger Agreement and their affiliates, as well as the amount of compensation received by Tudor for such services.

62. Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives.

63. The omission of this material information renders the Proxy Statement false and misleading, including, *inter alia*, the following sections of the Proxy Statement: (i) "Background

of the Merger"; (ii) "Recommendation of the GP Conflicts Committee and the MLP GP Board; Reasons for Recommending Approval of the Merger Proposal"; and (iii) "Opinion of the GP Conflicts Committee's Financial Advisor."

64. Fourth, the Proxy Statement omits material information regarding potential conflicts of interest of the Partnership's officers and directors.

65. Specifically, the Proxy Statement fails to disclose the timing and nature of all communications regarding future employment and/or directorship of Arc's officers and directors, including who participated in all such communications.

66. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to unitholders. This information is necessary for unitholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Partnership's unitholders.

67. The omission of this material information renders the Proxy Statement false and misleading, including, *inter alia*, the following sections of the Proxy Statement: (i) "Background of the Merger"; and (ii) "Recommendation of the GP Conflicts Committee and the MLP GP Board; Reasons for Recommending Approval of the Merger Proposal."

68. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to Arc's unitholders.

## COUNT I

**Claim for Violation of Section 14(a) of the 1934 Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and Arc**

69. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

70. The Individual Defendants disseminated the false and misleading Proxy

10

Statement, which contained statements that, in violation of Section 14(a) of the 1934 Act and Rule 14a-9, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially false or misleading. Arc is liable as the issuer of these statements.

71. The Proxy Statement was prepared, reviewed, and/or disseminated by the Individual Defendants. By virtue of their positions within the Partnership, the Individual Defendants were aware of this information and their duty to disclose this information in the Proxy Statement.

72. The Individual Defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

73. The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable unitholder will consider them important in deciding how to vote on the Proposed Transaction. In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Proxy Statement and in other information reasonably available to unitholders.

74. The Proxy Statement is an essential link in causing plaintiff and the Partnership's unitholders to approve the Proposed Transaction.

75. By reason of the foregoing, defendants violated Section 14(a) of the 1934 Act and Rule 14a-9 promulgated thereunder.

76. Because of the false and misleading statements in the Proxy Statement, plaintiff and the Class are threatened with irreparable harm.

## COUNT II

### Claim for Violation of Section 20(a) of the 1934 Act
### Against the Individual Defendants and Zenith

77. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

78. The Individual Defendants and Zenith acted as controlling persons of Arc within the meaning of Section 20(a) of the 1934 Act as alleged herein. By virtue of their positions as officers and/or directors of Arc and participation in and/or awareness of the Partnership's operations and/or intimate knowledge of the false statements contained in the Proxy Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Partnership, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

79. Each of the Individual Defendants and Zenith was provided with or had unlimited access to copies of the Proxy Statement alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

80. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Partnership, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same. The Proxy Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly in the making of the Proxy Statement.

81. Zenith also had direct supervisory control over the composition of the Proxy Statement and the information disclosed therein, as well as the information that was omitted and/or misrepresented in the Proxy Statement.

82. By virtue of the foregoing, the Individual Defendants and Zenith violated Section 20(a) of the 1934 Act.

83. As set forth above, the Individual Defendants and Zenith had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the 1934 Act and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the 1934 Act. As a direct and proximate result of defendants' conduct, plaintiff and the Class are threatened with irreparable harm.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C. Directing the Individual Defendants to disseminate a Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D. Declaring that defendants violated Sections 14(a) and/or 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

E. Awarding plaintiff the costs of this action, including reasonable allowance for plaintiff's attorneys' and experts' fees; and

F. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff respectfully requests a trial by jury on all issues so triable.

Dated:  October 4, 2017                                   **RIGRODSKY & LONG, P.A.**

                                                By:  */s/ Timothy J. MacFall*
                                                     Timothy J. MacFall
                                                     825 East Gate Boulevard, Suite 300
                                                     Garden City, NY 11530
                                                     (516) 683-3516

                                                     Brian D. Long
                                                     Gina M. Serra
                                                     2 Righter Parkway, Suite 120
                                                     Wilmington, DE 19803
                                                     (302) 295-5310

                                                     *Attorneys for Plaintiff*

**OF COUNSEL:**

**RM LAW, P.C.**
Richard A. Maniskas
1055 Westlakes Drive, Suite 300
Berwyn, PA 19312
(484) 324-6800